**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JAMES WITEMYRE,

    Plaintiff,

  v.                                   Case No. 1:21-cv-314

                                         JUDGE DOUGLAS R. COLE

GE FLIGHT EFFICIENCY
SERVICES, INC.,

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Defendant GE Flight Efficiency Services, Inc.'s ("GE Flight Efficiency") Motion to Dismiss for Lack of Jurisdiction and To Compel Arbitration (Doc. 8). In that motion, GE Flight Efficiency[1] seeks to compel Plaintiff James Witemyre ("Witemyre") to arbitrate his claims against GE Flight Efficiency. Those claims arise out of GE Flight Efficiency's decision to terminate Witemyre on May 31, 2020. Witemyre would prefer to litigate those claims instead.

For what is at first glance a straightforward issue, the instant motion has generated substantial briefing. This includes a sur-reply, a sur-sur-reply, and two additional supplemental briefs (one from each party). That is in part because Witemyre's grounds for opposing arbitration have shifted somewhat during the course of briefing, and in part because, about the time briefing was otherwise complete, the Sixth Circuit issued a new decision regarding motions to compel

---

[1] At the time the motion originally was filed, the named defendant was a different GE-affiliated entity called GE Aviation Systems North America LLC. Plaintiff moved to substitute GE Flight Efficiency as the party-defendant, and the Court granted that request. (*See* 6/23/21 Notation Order).

arbitration that had potential application here, and the Court thus requested supplemental briefing.

In any event, the motion is now fully briefed. For the reasons set forth below, the Court **GRANTS** the motion to compel arbitration, and **DISMISSES** the action **WITHOUT PREJUDICE**.

## BACKGROUND

**A.  GE Terminated James Witemyre, A Long-Term Employee, In May 2020.**

According to Witemyre's Complaint, as amended somewhat in his sur-reply to the instant motion, it is undisputed that one or another GE entity has employed Witemyre in various sales capacities for more than twenty years. More specifically, the Complaint alleges that Witemyre served as a Sales Representative with GE Aviation from June 25, 1986, until Summer 1992. It further alleges that GE Aviation re-hired him in a sales capacity in November 2000, and that he remained employed in that capacity until May 31, 2020, when GE Aviation terminated him.

In his sur-reply to the instant motion, Witemyre tweaks that account slightly, There, he asserts that, in 2011, he began working for "GE Flight Efficiency Services, Inc., a subsidiary of GE Aviation." (Doc. 12, #121). For its part, GE Flight Efficiency likewise appears to agree that it, rather than GE Aviation, was Witemyre's employer at the time of his termination. (*See* Notice of Removal, Doc. 1, #2). Further, GE Flight Efficiency does not dispute that Witemyre's employer transitioned from GE Aviation to GE Flight Efficiency in 2011. Thus, for purposes of this Motion, the Court assumes

that Witemyre was most recently employed at GE Aviation from 2000 through 2011, and at GE Flight Efficiency from that time through his termination.

**B.   Witemyre Sues His Employer In Ohio State Court, And His Employer Removes The Action To This Court.**

On April 5, 2021, Witemyre sued GE Aviation Services LLC in the Hamilton County Court of Common Pleas. (It is likely that, at the time, Witemyre was confused about exactly which GE entity employed him.) In his four-count Complaint, Witemyre asserted claims for age discrimination under Ohio law (Count I), disability discrimination under Ohio law (Count II), common law breach of contract (Count III), and common law unjust enrichment (Count IV). Witemyre completed service on GE Aviation on April 9, 2021. (Notice of Removal, Doc. 1, #2).

On May 7, 2021, GE Aviation removed to this Court. (*Id.*). Because Witemyre asserted solely state law claims, GE Aviation relied on diversity as the basis for removal. And, as GE Aviation contended that GE Flight Efficiency was actually the proper defendant for Witemyre's employment-related claims, GE Aviation showed that diversity of citizenship was met both as to GE Aviation and as to GE Flight Efficiency.

**C.   The GE Entity Moves To Compel Arbitration, Citing An Agreement That Witemyre Signed In 2008.**

Shortly after GE Aviation removed to federal court, it filed the instant motion seeking to compel arbitration. It styled the motion as falling either under Fed. R. Civ. P. 12(b)(1) (i.e., subject matter jurisdiction) or 12(b)(3) (i.e., improper venue). In addition to those procedural rules, GE Aviation also cited § 4 of the Federal

3

Arbitration Act ("FAA"). GE Aviation also attached an affidavit to that motion from Matthew Stevens, a "Human Resources Business Partner for GE Digital." (Stevens Aff. Doc. 7-1, #42). In that affidavit, Stevens explained that non-union employees of GE entities are subject to an alternative dispute resolution program called "Solutions." Stevens testified that Witemyre had been covered by that program "[s]ince 2008." (*Id.*). Stevens further averred that GE modified the program in 2015, and that Witemyre "electronically acknowledged receiving the notification email on August 29, 2015, by clicking a link within the email." (*Id.* at #43).

The Solutions program implemented a four-step dispute resolution process for all claims arising out of the employment relationship, including discrimination claims. The final step consisted of "binding arbitration before a third-party neutral arbitrator." (*Id.* at #42).

Witemyre opposed the motion. He first argued that GE Aviation had failed to establish that Witemyre ever signed an arbitration agreement. Specifically, in response to Stevens's affidavit stating that Witemyre was covered by Solutions from 2008 forward, Witemyre said that "GE fails to provide any information in their pleadings or series of attachments about how Witemyre agreed to Solutions in 2008." (Resp., Doc. 9, #92). And, as for the alleged 2015 acknowledgment, Witemyre says that clicking the link in the email to indicate he had received the email did not serve as confirmation "that Witemyre agreed to arbitrate any employment related disputes." (*Id.*). More specifically, he says that GE did not establish that it had provided Witemyre in 2015 "with actual notice that his continued employment at GE

4

was contingent upon acceptance of Solutions and corresponding [sic] arbitration agreement." (*Id.* at #93).

In its reply, GE Aviation attached the signed contract from 2008 in which Witemyre had agreed to be bound to Solutions as a condition of his employment. (Doc. 10-1, #101).

That led to a sur-reply. There, Witemyre no longer maintained that he had not signed an agreement in 2008. Now, he instead claimed that he had switched employment in 2011 from GE Aviation to GE Flight Efficiency (a GE Aviation subsidiary), and that the 2008 agreement between Witemyre and GE Aviation thus did not require him to arbitrate employment claims against GE Flight Efficiency. He further claimed that, in any event, the Court could not consider the 2008 contract attached as an exhibit to GE Flight Efficiency's brief, as the matter was before the Court on a motion to dismiss. As for the 2015 acknowledgment, he did not mention it—apparently relying on his earlier argument that the email had not provided him actual notice that his continued employment was contingent upon agreeing to arbitration.

Witemyre's new reliance on the GE Aviation/GE Flight Efficiency distinction led to a sur-sur-reply, filed on June 30, 2021. This time GE Flight Efficiency, rather than GE Aviation, filed the brief. That was because Witemyre (presumably in an attempt to bolster his argument that relied on the distinction between the two entities) had moved to substitute GE Flight Efficiency for GE Aviation after GE

5

Aviation filed its reply. As there appeared to be no dispute that GE Flight Efficiency was the employer, the Court granted that motion.

In the sur-sur-reply, GE Flight Efficiency noted that the Solutions program, to which Witemyre had bound himself in 2008 as a condition of his employment with GE Aviation, broadly applied to "the General Electric Company." To that end, the program defined the covered "Company" to include:

> GE and its past, present and future subsidiaries, affiliates, joint ventures, and parents … . For the avoidance of doubt, the Company includes any entity … included above, regardless of whether the entity remains a subsidiary, affiliate, joint venture or parent at the time the claim is brought.

(Doc. 15, #152). As for Witemyre's argument that the Court could not consider the contract at this stage of the proceedings, GE Flight Efficiency noted that it had brought the motion either under Rule 12(b)(1), or in the alternative Rule 12(b)(3), and in neither case was the Court limited to considering only those documents attached to the Complaint.

To further roil the waters, the day after GE Flight Efficiency filed its sur-sur-reply, the Sixth Circuit decided *Boykin v. Family Dollar Stores of Michigan*, No. 20-1153, 2021 WL 2708859 (6th Cir. July 1, 2021). There, the court addressed the correct procedural vehicles for a party to use in requesting an order compelling arbitration in a pending matter. The panel also discussed the appropriate remedy—a stay or dismissal—when a district court grants a party's request to send a matter to arbitration. As neither party had yet had an opportunity to address the case, this Court sua sponte ordered the parties to cross-file short briefs regarding how *Boykin'*s

teachings should apply here. The parties filed those briefs on July 15, 2021, meaning that the motion is now fully briefed and ripe for review.

## LEGAL STANDARD

Typically, the "legal standard" portion of an opinion is relatively straightforward. Not so here. That is because significant confusion surrounds the precise procedural mechanism a party should use when seeking to enforce an arbitration provision in federal court. That confusion is, in part, why this Court asked the parties to brief *Boykin*—the latest Sixth Circuit decision addressing the issue.

GE Flight Efficiency purports to have filed its motion under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3). *Boykin*, though, expressly says that the latter is not an appropriate procedural vehicle for seeking to compel arbitration in a pending matter. *Boykin*, 2021 WL 2708859, at *3 (noting that the Supreme Court's decision in *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55–57 (2013), "shows that parties should not use Rule 12(b)(3) to raise an arbitration agreement"). And the reasoning in *Boykin* suggests that Rule 12(b)(1) won't work either, as the existence of an arbitration provision does not create a jurisdictional defect per se, but rather creates only a contractual obligation to arbitrate. *Id.*

GE Flight Efficiency does not cite Rule 12(b)(6). That is perhaps surprising, as *Boykin* notes that some courts have held that Rule 12(b)(6) can be used as a vehicle for a motion compelling arbitration. But the Court agrees with GE Flight Efficiency's decision not to rely on that rule here for two reasons. First, *Boykin* notes that an order

compelling arbitration, which is the ultimate remedy GE Flight Efficiency seeks here, is not an available remedy under Rule 12(b)(6). *Boykin*, 2021 WL 2708859, at *4. Second, GE Flight Efficiency, at least by the end of its briefing, asks the Court to consider matters outside the pleadings, which the Court cannot do under Rule 12(b)(6).

But, while the various procedural rules that the parties cite all fail for one reason or another, GE Flight Efficiency also cites directly to the Federal Arbitration Act, and, in particular, 9 U.S.C. § 4. (Doc. 8, #78 ("Motions to compel arbitration are authorized under Section 4 of the Federal Arbitration Act.")). That saves the day for its motion, as *Boykin* notes that parties can proceed directly under either FAA § 3 or § 4 to pursue a request to compel arbitration. When a party moves to compel arbitration under one of these FAA sections, *Boykin* observes, the Federal Rules of Civil Procedure merely "fill in the gaps." 2021 WL 2708859, at *3.

*Boykin* also specifies the framework that courts should use in analyzing requests under § 4, such as the one GE Flight Efficiency presses here. To understand that framework, start with the statutory language:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration of the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Based on that language, *Boykin* explains that "[t]he question whether the party opposing arbitration has put the making of the arbitration contract 'in issue'

8

looks a lot like the question whether a party has raised a 'genuine issue of material fact.'" 2021 WL 2708859, at *4. In other words, if the party opposing arbitration raises a genuine issue of material fact relating to whether the instant dispute is subject to arbitration, the court "shall proceed summarily to the trial thereof." But if no such dispute exists, then the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In short, it appears that the Court's job here is to determine if, when considering the evidence that both parties have submitted, Witemyre has created a genuine issue of material fact as to whether he has an obligation to arbitrate the dispute here. That is the task to which the Court now turns.

## LAW AND ANALYSIS

The Federal Arbitration Act ("FAA") creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, there is a strong presumption favoring arbitration. *See, e.g.*, *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). But this "liberal policy favoring arbitration" is still subject to the fact that arbitration is, first and foremost, a matter of contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Therefore, a court cannot compel a party to arbitrate "a dispute which it has not agreed to submit to arbitration." *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972); *see also Volt Info. Sci., Inc., v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under

9

the Act is a matter of consent, not coercion."). Moreover, even where a dispute is subject to an arbitration agreement, a party can waive its ability to assert its rights under that agreement if it willingly participates in judicial proceedings as to covered claims. But importantly, "[r]emoval to federal court," as GE Flight Efficiency did here, "does not waive a party's otherwise enforceable right to arbitrate." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (citing *Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 707 (6th Cir. 2005)).

With all of that in mind, consider the facts here. GE Flight Efficiency claims that Witemyre signed an agreement in 2008 compelling him to arbitrate the claims that he seeks to litigate here and re-acknowledged that same arbitration provision in 2015. For his part, Witemyre does not appear to argue that the arbitration provision in that agreement is unconscionable or unenforceable for any reason. Nor does he dispute that the claims in this case fall within the scope of the arbitration provision as drafted. Rather, he contends (on various grounds discussed below) that the agreement does not bind him.

On that front, Witemyre originally claimed that GE Flight Efficiency had failed to prove that he had actually signed the arbitration agreement. Rather, he said, GE Flight Efficiency relied on a conclusory assertion by a human resources employee that Witemyre was bound from 2008 onward. The Court need not decide, though, whether that sworn testimony from the human resources employee would have sufficed, as GE Flight Efficiency has since produced the actual signed contract. And Witemyre

10

now appears to concede that his GE-didn't-show-that-I-signed-anything-in-2008 argument is a dead letter.

Given that Witemyre is not arguing about the scope of the arbitration provision in the agreement, his concession that he signed the 2008 agreement would appear to end the matter. But he has one remaining card to play. He notes that he signed the agreement with GE *Aviation* in 2008, but that in 2011 his employment transferred to GE *Flight Efficiency*, a GE Aviation subsidiary. Thus, he argues, GE Flight Efficiency has failed to provide sufficient evidence of an agreement to arbitrate between Witemyre and GE *Flight Efficiency*.

That argument fails for two reasons. First, the plain language of the arbitration provision that Witemyre signed in 2008 says that the agreement to participate in the Solutions program applies to any "Covered Claim" by a "Covered Employee" against the "Company." (Doc. 10-1). As already noted, Witemyre does not argue that his claims fall outside the definition of "Covered Claims." "Covered Employees," meanwhile, refers to any employee of the "Company," which the agreement defines to mean "GE and its past, present and future subsidiaries, affiliates, joint ventures, and parents." (*Id.*). And here there is no question that both GE Aviation and GE Flight Efficiency fall within the definition of "Company." Thus, Witemyre's move from one GE affiliate (GE Aviation) to another (GE Flight Efficiency, a subsidiary of GE Aviation) did nothing to alter his status as a "Covered Employee" under the agreement, and thus did not change his obligation under the contract to arbitrate "Covered Claims."

Second, even were that not the case, Witemyre re-committed to the arbitration agreement in 2015. In connection with its briefing here, GE Flight Efficiency provided an affidavit stating that on August 28, 2015, Witemyre received an email notifying him of certain (non-relevant here) changes to the Solutions program. (Doc. 7-1). That email, which GE Flight Efficiency also attached as an exhibit to its motion: (1) confirmed to Witemyre that he remained subject to the program—including the obligation to arbitrate; (2) required Witemyre to confirm receipt by clicking a link; and (3) encouraged Witemyre to "contact [his] HR representative if [he had] any questions about these changes." (*See* Doc. 7-3, #73). The GE representative further testified that Witemyre clicked the required link, which Witemyre does not dispute.

In sum, the evidence plainly shows that Witemyre signed a broad arbitration agreement in 2008 that required him to arbitrate disputes between him and the "Company" relating to his employment (or the termination thereof). Although that alone would suffice to show a requirement to arbitrate here, lest there be any doubt, Witemyre received additional confirmation of his obligation to arbitrate in 2015. Given this evidence, especially when considered in light of the presumption in favor of arbitration, Witemyre has fallen well short of creating a "genuine dispute" as to whether the claims in this action are subject to arbitration. Accordingly, the Court determines that "the making of the arbitration agreement" is not "in issue," and thus the Court need not "summarily proceed to the trial thereof." 9 U.S.C. § 4. Rather, the Court will order "the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

That still leaves the question of the status of this matter on the Court's docket while that arbitration is proceeding. GE Flight Efficiency maintains that either a stay or dismissal may be appropriate, but it requests that the Court dismiss the action without prejudice, noting that this Court did so after ordering arbitration in another matter recently. (Doc. 8, #81). Witemyre likewise seems to believe that some type of final appealable order is the appropriate result if the Court grants GE Flight Efficiency's motion, although he also appears to believe that dismissal is not an appropriate remedy. (Witemyre Suppl. Br., Doc. 17, #163).

The remedy matters, at least somewhat, for a couple of reasons. First, the remedy may affect whether immediate appeal is available. As a general matter, a party can appeal only "final decisions." 28 U.S.C. § 1291. A stay to allow for arbitration is not a final decision. *Boykin*, 2021 WL 2708859, at *3 ("A party generally may not immediately appeal a non-final decision that grants a stay pending arbitration, no matter how meritorious its claim of error."). Thus, had GE Flight Efficiency sought relief under FAA § 3, which provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, GE Flight Efficiency might have argued that the Court was required to enter a (non-appealable) stay order. But GE Flight Efficiency instead moved under FAA § 4, and GE Flight Efficiency expressly requests dismissal, which, as it notes, is an available remedy if the Court enters an order compelling arbitration. Moreover, as mentioned above, Witemyre does not dispute that remedy (although he disputes whether GE Flight

13

Efficiency should prevail on its motion). Absent a request for a stay, a court can dismiss a case in favor of arbitration, rather than staying it. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017).

Dismissal also seems consistent with the Sixth Circuit's observation in *Boykin* that proceedings under § 4 are akin to summary judgment on the issue of arbitration. After all, a grant of summary judgment typically qualifies as a "final decision."

Accordingly, the Court will dismiss this matter, albeit without prejudice. And, in the interests of clarity, the Court further notes that it intends for this dismissal to be a final decision on the merits of the request for arbitration, and thus subject to immediate appeal. *See Howell v. Rivergate Toyota*, 144 F. App'x 475, 477 (6th Cir. 2005) (holding that an order dismissing an action without prejudice on the grounds that the claims are subject to an arbitration provision is a final decision subject to immediate appeal under 28 U.S.C. § 1291).[2]

But, in granting dismissal without prejudice, the Court also observes the second potential implication of that relief. Unlike a stay, which would preserve the filing date of the original action for statute-of-limitations purposes, a dismissal—even without prejudice—at least arguably means that the statute of limitations will continue to run until any arbitration is complete and a new suit (if any) is filed.

---

[2] Had the Court *denied* the motion to compel arbitration, the FAA itself would have made that Order immediately appealable. *See* 9 U.S.C. § 16(a)(1)(B). When the Court *grants* such a motion, however, the same provision expressly states that such an Order is *not* appealable. See 9 U.S.C. §16(b)(2) ("Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order … (2) directing arbitration to proceed under section 4 of this title."). Notwithstanding that language, though, as noted in the text above, at least when such an Order is coupled with a dismissal (with or without prejudice), the resulting Order is immediately appealable.

14

Whether pursuing the matter in arbitration will toll the limitations period that applies in future court proceedings involving the same claims (if any such proceedings occur) is an issue that the parties have not briefed and that the Court need not reach at this juncture. The point is merely that the parties should be mindful of potential statute of limitations issues given the remedy the Court orders here. That being said, the statute of limitations issue presumably will not arise if the matter proceeds in arbitration in accordance with this Order, as it is unlikely that the matter would return to federal court, except for possible review and enforcement of any arbitral award.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** GE Flight Efficiency's Motion to Compel Arbitration (Doc. 8) and hereby **ORDERS** the parties to proceed in arbitration in accordance with the Solutions program, as amended in 2015. Further, the Court **DISMISSES** this action **WITHOUT PREJUDICE**, which the Court intends as a final decision subject to immediate appeal, if Witemyre is so inclined. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

July 21, 2021
**DATE**                                                              **DOUGLAS R. COLE**
                                                                      **UNITED STATES DISTRICT JUDGE**